At this time, we'll hear United States v. Colo Battista. Good morning. Good morning. I may please the court. My name is Brian Melber. I'm here on behalf of the defendant, Appellant Damian Colo Battista. As the court knows, this appeal arises from a jury verdict following a trial in the Western District of New York. It was a single defendant case with three counts in the indictment, and Mr. Colo Battista was convicted of all three counts. Interestingly, in respect to count number two, the weapon charge under section 924C, the jury also found in a special verdict item that there was not proof beyond a reasonable doubt that Mr. Colo Battista ever, ever discharged a weapon in furtherance of the conspiracy. And just to be clear, the government has suggested in its response that we're making an inconsistent verdicts argument that really is not the thrust or the focus of our attack on the conviction of count three. Count three, of course, is the murder in furtherance of the conspiracy charge. And in that count, Mr. Colo Battista was charged with murdering Miosha Harmon by shooting her with a firearm. But as I say, we're not here with an inconsistent verdicts argument. And that's because the jury was charged on two vicarious theories of liability, section two, aiding and abetting theory of liability, as well as given a Pinkerton charge. The Pinkerton charge was given over the objection of defense counsel. And so our view of this is that we should not look upon this as an inconsistent verdict, but as a consistent verdict rather. So that where the jury finds that there was not proof beyond a reasonable doubt that Mr. Colo Battista was guilty of the conviction in count three, if that is viewed as being a conviction on one of those other two vicarious theories of liability. And that takes us to our sufficiency concern. Well, before you abandon inconsistency, normally we would take each count and inquire is there evidence sufficient to go to the jury on those counts. Normally that's how we would start in any case. If we did that here and looked at the third count and thought there was sufficient evidence under a theory of directly committing the crime, not secondary, but direct. If we thought there was evidence to support that, then wouldn't the only objection to affirming that count on that ground be the claim of an inconsistent finding? No, and that is what the district court did. Judge Dracey examined the testimony and there was testimony from two witnesses. Both of them indicted co-conspirators, indicted and tried under a separate indictment. And that was the evidence at trial that the court looked to to conclude that there was evidence that Mr. Colo Battista was directly responsible for that shooting. That he was one of the shooters, so to speak. The jury found otherwise. The jury found that there was not proof beyond a reasonable doubt. Well, the very fact that you say found otherwise, doesn't that suggest that there is an issue of inconsistency here? You can make that argument, Judge, but I don't think that that would avail Mr. Colo Battista of the relief that we're looking for. As we know, the law in that area says that we've got two inconsistent verdicts. Generally, you can't tell whose ox was bored and you leave them both stand. If we went down that road, you'd probably lose. Yes, Judge. So, rather than go down that road, understandably, you invite us to say the way to harmonize these verdicts and findings is to say they are consistent. Is that the idea? Yes, Judge, and not just that I would rather. It isn't just that I would rather, though of course I would, candidly. It's not just that I would rather. It seems to me that if the verdict can be harmonized, it should be harmonized. And we shouldn't deem it to be inconsistent solely for the purpose of rescuing count three from what would otherwise be its insufficiency. Isn't there a case law that says if there's any theory in the evidence that will support a verdict, we're obliged to uphold it? Judge, there are cases of that sort, but I'm not aware of any in this posture where you've got this type of mixed verdict. And you have the alternative theories of liability to consider for count three. So for count three, we have this other possibility, and in fact, not just possibility. I think we have to understand the jury's verdict as the jury's conclusion that Mr. Calabitista, guilty of count three of the murder, under one of those other alternative vicarious theories of liability, either aiding and abetting or the Pinkerton charge. And as to both of those, I think it's very clear from the record that there would not be sufficient evidence in the record. For the aiding and abetting, what is lacking is an affirmative physical act. That is not, and it's one that is not an act of direct responsibility. So in this case, there was testimony that Mr. Calabitista was one of the shooters. It's very questionable, and certainly we argued at closing. And I'd be happy to tell you the reasons why I think that evidence was not sufficient, that he was directly responsible. But I think the jury's already found that. You have to find, in order for there to be a sustainable conviction of count three under the aiding and abetting theory, there would have to be some physical act that Mr. Calabitista did, some testimony that he assisted in the execution of the crime. But not the same evidence that would make him directly responsible. And similarly with Pinkerton, for there to be a Pinkerton liability of count three, you'd have to find that this was a reasonably foreseeable, that even though he was not directly involved in the killing of Ms. Harmon, that it was reasonably foreseeable to him, based on some facts in the record, that another member of the conspiracy would murder Meosha Harmon by shooting her with a firearm. And again, that proves that it's lacking. Council, I'd like to change topic in the short time remaining and raise an issue that you did not brief, but that I find very compelling. And that is that Judge Geraci appeared to have viewed the guidelines as mandatory. Did you notice that? It certainly was my sense that in some instances, and including the ones that we have explicitly raised in our brief, that Judge Geraci was giving too much deference to the guidelines. I think I would say that. He said, if I can quote from the sentencing colloquy, that a downward departure from a mandatory term of life imprisonment, this is from page 850 of the appendix, is only permissible in cases where the government files a motion for a downward adjustment due to the defendant's substantial assistance. So he viewed this as mandatory. The government tried to save him later on, Mr. Rodriguez said at page 853. I just wanted to clarify, just for the purposes of the record, your honor, I think stated probably in reference to paragraph 116 of the pre-sentence report, that a downward departure from a mandatory statutory term of life imprisonment is not appropriate. And then he goes on to say, Mr. Rodriguez, the US attorney, there was no mandatory authority, statutory life, in this case, and the court says thank you, that's it. Yeah, so to the extent that the judge suggested that there was something mandatory in that mechanism, the government did clarify it later. But I- That's a serious error by our jurisprudence to treat the advisory guidelines as mandatory. I'd agree, Judge, and I would ask for an opportunity. It's an error, I believe, that we could notice, even though you didn't brief it. Judge, and that being the case, I'd ask the court to take notice of that, and I'd ask for an opportunity to address that with a Rule 28 letter if I could. Well, it's not Rule 28, it's not something that you weren't aware of, you were right there. Yes, Judge. You said nothing when Mr. Rodriguez tried to save the judge, tried to tell the judge it's not mandatory, and you said nothing at that point. No, that's not true, you said we agree with that. Which would be the case, Judge, that it's not mandatory, and I think that was the appropriate thing to say at the time. Thank you. Okay, thank you. We'll hear you on rebuttal. May it please the court. Sorry. Monica Richards on behalf of the United States of America in this case. Good morning. I'm a little rattled, of course, by Judge Pooler, by your final question there, and I wish I had more time to take a look and see, but Judge Geraci, who's an experienced district court judge, does usually say the, I'm sorry? No, go ahead. I said he's very experienced, and we know that he knows that the sentencing guidelines are not mandatory, and yet we have to go by the record he made. Do you think he meant that the departure could not be made, but that doesn't necessarily preclude a non-guideline sentence altogether? I'd like to think so, your honor. Thank you. I read that as dealing with the application note. I thought that we were very specific. When I read it quickly right there, I did think we were dealing very specifically with that issue. Again, relying on this judge's experience, I know that he's well aware that the guidelines are not mandatory. If I could then, with regard to the substantive matter, with regard to the conviction, this is nothing here other than an attempt to vitiate the jury's verdict on count three. And with regard to that, this court's noted during this argument that in order to sustain that conviction, this court, as the jury was also instructed, is to consider that count independently of any of the other counts. What's the evidence that supports either aiding and abetting or Pinkerton with respect to count three? I know it was argued, but what is the good and sufficient evidence of it? Well, with regard to the aiding and abetting, I think that's easily addressed. I mean, he was one of the two people who got out of the car. Whether or not he shot his gun may have been a subject of the jury's discussion. We do know, however, that there were nine or ten bullets recovered, and each gun held five bullets each. So when we do the simple math, we know that there were two shooters. Then you're assuming that he discharged the gun. The jury told us he didn't. Well, the jury told us with regard to the aiding and abetting, if I could just make that better argument perhaps, that even if they both got out of the car and the jury didn't believe that he ever shot the gun, then the other shooter was there, the other shooter was present, and shot the gun and caused the murder. When the jury was instructed as to aiding and abetting, the jury was instructed that they properly, and there was no objection to the aiding and abetting, that in order to find that you don't have to know which gun was the source. You don't have to know which gun killed. But that if it came from one of the, I'm sorry, I'm sorry, on the aiding and abetting. That you have to have proof that it wouldn't have happened but for the actions. And this was a gentleman who was known to have been the source for guns for the, and a supply source for the guns, and a storage source for the guns for this conspiracy. He had the guns, he was present at the scene, and he was part of the plan to develop the let's go take care of that situation. Meaning let's go shoot the rival drug dealer. He was part of that plan at the house. He got in the car, he got out of the car, he shot at that, well, I'm sorry. He got out of the car with a gun and the person was murdered. So to say that that's not aiding and abetting would be very difficult under this court's jurisprudence. Was there, there was evidence, wasn't there, that two bullets struck the victim but one was the fatal shot? Killed, you're right, yes, your honor, correct. So one shooter fired the bullet that killed the person. Well, we don't know that. I mean, we don't know that the other- I thought the evidence was one that the, might have been the medical examiner. But somebody said that the shot to the head was the one that killed him. Correct. But we don't know that the other shot wouldn't have also eventually caused a death. On this record, we happen to have a fatal shot that was certain. But that part's uncertain. That part was certain, yes. So. I'm sorry. A shot to the head killed him, then one person killed him. Correct. And the jury could have thought it was the other person. That's correct. Similarly, with regard to the Pinkerton liability, that it was reasonably foreseeable to him was the point that my colleague highlighted as the part that's unavailable on this record. I strongly disagree. This was a conspiracy, a group of conspirators that had a history of violence that were involved in two murders prior to this. And the jury heard the evidence of that. They regularly conducted drive-by shootings. They had, in fact, with regard to this very, this drug dealer that they were going after that night, they had previously driven by the place where he was known to be and shot up at the house where the party had been the night before. So this isn't possibly something that wasn't reasonably foreseeable under the Pinkerton liability. So even if this court discounts the direct evidence based on a pull-through of the jury's special verdict on count two, which again I must note was a matter that they found for sentencing purposes only. If this court were to find that that was undid a finding with regard to direct evidence of his involvement on count three, I can't suggest the court should do that by any means here. But if it were, there's plenty of available evidence with regard to aiding and abetting. And Pinkerton and this jury was properly instructed on that. Do you think we as an appellate court are entitled to take count three, determine that there is evidence to support it on a direct liability theory, and then deal with the finding as a inconsistent finding that we are supposed to disregard? Can we do that? I did that. I hope this court can do that. With regard to count three, the jury was instructed to do that. 9 to 770, the judge's verdict, there was no objection to that beforehand, no objection afterwards. It was also instructed on Pinkerton and there was no objection. There was an objection on Pinkerton, respectfully. There was an objection on Pinkerton, but it was overruled. But it was overruled, yes. Yes, but aiding and abetting, I would also suggest to the court. Well, there's another ramification here, because if the jury convicted on count three under Pinkerton, then it would seem that under application note two, the court was not required to impose a life sentence, which goes indirectly to a point made by Judge Pooler. I think that's why we're here. And I think the court thought that it was bound to. Well, I disagree again with that second premise, but I think that's why we're here. I think this case ultimately is a sentencing case. Respectfully to my colleague, the presence of the- You seem to like it to me. Well, the presence of the proof here was overwhelming. The proof of this gentleman's involvement in the conspiracy has not come up before this court on this appeal. The fact of the murders is overwhelming. The fact that an innocent woman with two children was killed, it was evident from this record. So with respect to all of those matters, that's why I believe we're challenging this. I haven't spoken to my colleague about that, but I do believe that's why we're here. It comes down to the sentencing issue. And again, respectfully, if there's an opportunity that's provided to my colleague to address that, I would request the same. Now you're talking about which application note? With regard to the Pinkerton liability, with regard to the- You said, if it comes down to sentencing, is the sentencing issue you think is here, is which application notable as? Well, it would be what makes the sentence life. I'm sorry that I don't have it at my fingertips. I could grab it, but it would be the one that makes the, there was a motion, or there was an issue with sentencing with regard to my colleague asked the court to depart. Using a different application note. Yes. I'm sorry, I don't have the number in front of me. And so if it was, as Judge Jacobs pointed out, if it was under Pinkerton liability, then yes, we wouldn't be facing a life sentence here, we'd be looking at a different range. But again, here on this record, the government submits, there's no basis for this court to do that. Unless there's further questions. Thank you. We'll hear rebuttal. Judge Jacobs, as you suggested, it is one of the ramifications of the, if in fact the jury found Mr. Calvertis still guilty of the murder under a Pinkerton or alternating abetting theory, then application note 2B to guideline 2A1.1 would apply instead of 2A, application note 2A, which is the application note which the court looked to and I think relied on for its belief that there needed to be a life sentence, and that is an issue before the court. We believe since it was a vicarious theory of liability that was the foundation for the conviction of count three, that application note 2B would apply and that suggests that the court consider a downward departure and that's what we're asking this court to find and to send this case back to Judge Geraci for that consideration along with reconsideration of the second sentencing issue which we raised in our brief which has to do with the drug calculation. In that section of the judge's guidelines calculation, he simply aggregated all of the alleged trafficking of the entire conspiracy of 18 years. And found that that was the appropriate amount of drugs to attribute to Mr. Calvertisto. When the proof at trial was very, very limited in terms of Mr. Calvertisto's involvement in any drug trafficking. There was no proof that he ever bought, sold, transported, packaged, did anything with the drugs. He was a drug user and the record is replete with references to that. And he received, according to the testimony he received on one occasion during this 18 year conspiracy, 31 grams of cocaine, powder cocaine from one of the conspirators. And then on one other occasion, when he was living with his wife who was the sister of one of the conspirators. And word came that there was going to be a search, he removed drugs from his home. That's the sum and substance of all of Mr. Calvertisto's connection to drug trafficking. And therefore, we argued that Judge Geraci should have made a particularized finding about the drug quantity that was relevant to Mr. Calvertisto, and he failed to do that. Claim is he's the enforcer of the entire operation, that's the claim. Judge, that is the claim, that's the argument that the government made, and even there, the proof was fairly limited. We heard about two occasions on which he was alleged to have committed assault. We heard about one occasion when he was alleged to have given a gun to somebody else in the conspiracy. And then we've got this event with Ms. Harmon. Where the totality of the testimony of his involvement in that shooting came from two co-conspirators who each were facing charges for that murder themselves. They were charged and prosecuted under a separate indictment, but- Well, the jury could credit what they testified to. They could, and- Your client had been attacked the day before, attended a meeting in which it was decided to go after these people, and he went. He not only got in and out of the car, but he got in and out of the car with a gun. And that itself could be aiding and abetting because he was another firearm on the scene. Whether he discharged it or not, he was there ready, willing, and able. Well, Judge, I would say that the proof, as the government indicated a minute ago, the proof was that both of the guns were discharged by the number of the bullets. That, I think, is the character of the proof. And that the two shooters, whoever they were, both shot at the house. So I think for an aiding and abetting liability, to go back to that issue, you'd have to find some other basis other than the possibility that he's out of the car with a gun and shooting. Different caliber casings were found. There were two weapons. One of them was a .38 caliber and one was a .357 caliber. And actually, the ballistics expert suggested during the proof of this trial that those are more or less the same caliber. I don't know if I buy that. But yes, there were two different caliber guns and there were casings that I think would have been related to each one of those guns. And there was a number of bullets discharged that could not have been discharged from just one gun. Just to come back to the quantity claim again, do I understand you right? You're not disputing that an enforcer of a drug operation can be held liable for the entire quantity. You're disputing that there was enough evidence to show he was an enforcer. No judge, I'm making the other contention as well, that if he had some role as an enforcer, I think that the court still should make a finding in terms of what drug quantity was foreseeable to him, given under these facts, given what limited contact and involvement he ever had with the amounts that the whole operation was moving. It's not clear that he would have known or foreseen or had any way to be aware of those astronomical quantities. Remember, this is a course of 18 years and the court found that it was over 31,000 kilograms of cocaine to do his calculation. Thank you. Thank you. Thank you. We'll reserve decision.